IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FRANKLIN D. COLLINS, JR.,        )
#150 739,                        )
      Plaintiff,                )
                             )
      v.                        )        CIVIL ACTION NO. 2:14-CV-231-WHA
                             )                      [WO]
DR. JOHNNY BATES, *et al*.,      )
                             )
      Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This 42 U.S.C. § 1983 action is before the court on a complaint and amendments thereto

filed by Plaintiff, Franklin Collins, an inmate incarcerated at the Camden Work Release Center in

Camden, Alabama. Collins alleges Defendants acted with deliberate indifference to his health

during his incarceration at the Montgomery County Detention Facility ["MCDF"] in Montgomery,

Alabama.  Collins names as defendants Dr. Johnny Bates, Dr. Ronald Roberson, DDS,[1] LPN

Tiffani Stanberry,[2] RN Nancy Lovvorn,[3] RN Callie Johnson, LPN Latoya Walker,  LPN Tamieka

Copelin, LPN Valerie Slater, LPN Cherri Jemison, and LPN Dionne Baker. These individuals are

or were employees or agents of Quality Correctional Healthcare ("QCHC") during the time period

relevant to the subject matter about which Collins complains.  Additional defendants include

Wanda Robinson and Carmilla Maldonado who are or were employees of the Montgomery County

Detention Facility ("MCDF") during the time period relevant to conduct about which Collins

complains. Collins sues the named defendants in their individual and official capacities. In addition

to filing his claims under § 1983, Collins brings this action under the Americans with Disabilities

_____

[1] Identified in the complaint as "Dr. Ronn."
[2] Identified in the complaint as "Nurse Sansbury."
[3] Identified in the complaint as "Nurse Louvern."

Act, 42 U.S.C. § 12101 *et seq.*, and the Universal Declaration of Human Rights Act ("UNDHR").

He seeks damages, injunctive and declaratory relief, attorney's fees, costs, and investigation of

Defendants for violations of 18 U.S.C. §§ 241, 242. Plaintiff requests trial by jury.

Defendants filed answers, special reports, supplemental special reports, and supporting

evidentiary materials, including affidavits and certified medical records, addressing Collins's

claims for relief. Docs. 72, 73, 74, 77, 78, 79, 228, 238.  In these documents, Defendants deny they

acted in violation of Collins's constitutional rights.  Upon receipt of Defendants' special reports,

the court issued an order directing Collins to file a response, including sworn affidavits and other

evidentiary materials, and specifically cautioning Collins that "the court may at any time thereafter

and without notice to the parties (1) treat the special report and any supporting evidentiary

materials as a motion for summary judgment." Doc. 89 at 2. Collins responded to Defendants'

reports, but his responses do not demonstrate there is any genuine issue of material fact. The court

will treat Defendants' reports as motions for summary judgment, and resolve these motions in

favor of Defendants.

## I.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

[dispute] as to any material fact and that the moving party is entitled to judgment as a matter of

law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.  2007); Fed.  R.

Civ.  P.  56(a)  ("The  court  shall  grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

The party moving for summary judgment "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the [record, including

pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Collins to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593–594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

Collins's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION[4]

### A.     Motion to Dismiss

On October 17, 2014, Collins filed an opposition to Defendants' dispositive motions. Doc. 110. In this pleading, Collins seeks dismissal of: his requests for injunctive and declaratory relief;[5] his claims filed under the Americans with Disabilities Act; and his claims filed under the UNDHR.[6] *Id.* at 27. Collins's October 17 pleading also requests dismissal of this action against Defendants

---

[4] In analyzing Collins's claims, the court finds he primarily challenges the adequacy of medical care he received during his incarceration at MCDF, the grievance policy at the facility, and matters associated with the jail's imposition of co-pays for medical services provided to inmates. The court does not address or analyze those claims or arguments contained in Collins's pleadings which do no more than recite the elements of a cause of action or reflect quoted passages from case law without establishing any connection between the cited statute or quoted material and the actions of a named defendant. The court will address and/or analyze only those claims which are plausibly causally connected to a defendant in the complaint and amendments thereto. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (finding that a plaintiff must establish a causal connection between a defendant's actions, orders, customs, policies, or breaches of statutory duty and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted in a § 1983 action); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1983) (same). Many of Collins's allegations in his amendments to the complaint as well as his arguments in his opposition (Docs. 110, 198) are not connected to a defendant. The court will not discuss the unconnected allegations or arguments because they fail to state a claim upon which relief may be granted. *See GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted) (finding that even though the court should show some leniency to a *pro se* litigant, "this leniency does not give a court license to serve as *de facto* counsel for a party . . . , or to re-write an otherwise deficient pleading in order to sustain an action . . ."

[5] Collins's request for declaratory and injunctive relief would be dismissed even in the absence of his motion as the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

[6] Notwithstanding Collins's request to dismiss his § 1983 claims based on alleged violations of the UNDHR, the court notes that in any event, he could not base his § 1983 action on the violation of UNDHR rights. *See Moore v. McLaughlin*, 569 F. App'x 656, 660 (11th Cir. 2014), *citing Sosa v. Alvarez–Machain*, 542 U.S. 692, 734 (2004) ("The rights secured by the UNDHR are not federal rights.").

Baker, Copelin, Jemison, Slater, and Walker. *Id.* Upon consideration of Collins's pleading, considered a motion to dismiss the claims, parties, and requested relief as described, the court concludes that the motion is due to be granted. *See* F. R. Civ. P. 41(a)(2); *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986).

## B. Official Capacity

Defendants Maldonado and Robinson assert Collins's official-capacity claims against them are due to be dismissed based on the Eleventh Amendment to the United States Constitution Doc. 77 at 8. The Eleventh Amendment bars suits for money damages against a state by the citizens of that state, unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has the State of Alabama consented to suit. *Id.* at 1525. Moreover, Eleventh Amendment immunity extends to state officials sued in their official capacities when "'the state is the real, substantial party in interest.'" *Id.* at 1524 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). Under Alabama law, because sheriffs are deemed "executive officers of the state," lawsuits against sheriffs in their official capacities are, in essence, lawsuits against the state. *Id.* at 1525 (citation omitted). Thus, the Eleventh Amendment provides absolute immunity to sheriffs sued in their official capacities. *Id.; Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1288 (11th Cir. 1998) ("[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."). This immunity extends to deputy sheriffs because of their "traditional function under Alabama law as the Sheriff's alter ego." *Carr*, 916 F.2d at 1527. Accordingly, Defendants Maldonado and Robinson are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities." *Lancaster v. Monroe*

*Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

Regarding the QCHC defendants, these defendants are employees of QCHC, a private corporation which contracts with MCDF to provide medical care and services to inmates in their custody. There being no indication that these defendants are state officials, they are not entitled to sovereign immunity.

## C.     Legal Standard

On August 28, 2012, Collins was booked into the Montgomery County Detention Facility on charges of theft of property II, burglary II, and possession of burglar's tools. He entered a guilty plea to these charges and was sentenced on May 30, 2013. On August 16, 2013, Collins was released to the Alabama Department of Corrections to begin serving his state sentence. Doc. 78-1 at 1–2. Although a detainee when he entered MCDF, after entry of his guilty plea on May 30, 2013, Collins's status at the detention facility became that of a convicted inmate.[7]

Regarding Collins's challenges to conduct or actions which arose during his detention at MCDF as a pretrial detainee, these claims are considered under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime. *Bell v. Wolfish*, 441 U.S. 520 (1979). The Eighth Amendment's prohibition against cruel and unusual punishment governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").

---

[7] Collins was transferred to the custody of the Alabama Department of Corrections on August 16, 2013.

"[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson Cty. Comm.*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable.... A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466, 2473 (2015). The Court in *Kingsley* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind. That is because . . . 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.' *Id*. at 2472 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The Court further emphasized that the "guarantee of due process has [historically] been applied to *deliberate* decisions of government officials to deprive a person of

life, liberty or property." *Id*. (emphasis in original) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

The Supreme Court has not yet ruled on whether to extend the objective reasonableness standard of review set forth in *Kingsley* to cases of pretrial detainees which do not involve the use of excessive force, *e.g.*, cases challenging medical treatment or conditions of confinement. The Eleventh Circuit Court of Appeals has continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions. *See Massey v. Quality Corr. Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), *aff'd*, [*Massey v. Montgomery Cty. Det. Facility*, 646 F. App'x 777] (11th Cir. 2016) (addressing claims of a pretrial detainee challenging the medical treatment provided to him while in a county jail, without reference to *Kingsley*, and applying the deliberate indifference standard to find that the defendants' actions did not rise to the level of deliberate indifference); *McBride v. Houston Cty. Health Auth.*, 2015 WL 3892715, at *10, 15–20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim) [*aff'd* 658 F. App'x 991 (11th Cir. 2016) (finding the district court properly applied the deliberate indifference standard of the Eighth Amendment in denying summary judgment to defendant on pretrial detainee's challenge to constitutionality of medical treatment provided for skin condition)]; *White v. Franklin*, 2016 WL 749063, at *5–8 (N. D. Ala. Jan. 28, 2016), *adopted*, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley's* objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent). In light of the foregoing authorities, the court

deems it appropriate to apply the deliberate indifference standard to Collins's claims of inadequate medical treatment.[8]

## D.    Deliberate Indifference

Collins alleges Defendants acted with deliberate indifference to his medical needs during his incarceration at MCDF. To support his allegations, Collins indicates he required immediate medical attention when he entered MCDF because seven of his teeth needed to be pulled due to decay and severe pain. On October 14, 2012, he submitted a sick call form on which he wrote "dental needs." A nurse evaluated Collins and gave him a prescription. On October 31, 2012, Dr. Roberson extracted two of Collins's teeth and informed him "[he] needed to return." Collins submitted a sick call request on November 1, 2012, but Nurse Jemison told him it was too soon to return to see the dentist. Collins states he did not receive a referral to the dentist but nevertheless incurred a charge for the November 1 visit without an evaluation. On January 19, 2013, Collins states "[t]he pain started to escalate again," and he submitted a sick call request checking the space marked "dental." Nurse Stanberry, Collins asserts, told him "Mr. Ronn, [dentist], don't know what he is doing, wait until you go home." Collins told her he could not eat and needed his teeth out. On February 1, 2013, Collins developed an infection which caused "inflammation of the bone," and his mouth became worse and smelled "horrable [sic]."  The infection spread "everywhere" and the left side of Collins's chest became swollen. Collins signed up for sick call on February 7,

---

[8] The court notes that two Circuits recently applied *Kingsley's* holding outside of the excessive force context. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (concluding "that the Supreme Court's decision in *Kingsley* altered the standard for deliberate indifference claims under the Due Process Clause," and holding that, in light of *Kingsley*, an objective standard of deliberate indifference applies in due process cases), and *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (interpreting *Kingsley* as standing for the proposition that "a pretrial detainee who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent—something akin to reckless disregard"), *cert. denied*, No. 16–655, ___ U.S. ____, 137 S. Ct. 831, 832 (2017).

2013, because of his swollen chest. Dr. Bates evaluated Collins on February 14, 2014, and instructed him to put hot water compresses on his chest "and see if it will come to a head." Dr. Bates evaluated Collins again on February 25, 2013, at which time Collins describes his chest as being "the size of a football." On August 9, 2013, Collins kicked his cell door and yelled for help stating he "couldn't take the pain anymore." A jailer responded to Collins and removed him from his cell. He was then taken to Jackson Hospital where he had immediate surgery. Collins maintains the denials and delays of medical and dental treatment left his ribs disfigured and required surgical removal of his teeth in October and November of 2013 after his transfer to the Ventress Correctional Facility. Doc. 1 at 11–16.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). However, medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); quoting *Rogers v. Evans*, F.2d 1052, 1058 (11th Cir. 1986). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (finding, as directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."). "A defendant who unreasonably fails to respond or refuses to treat an

inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Within the Eleventh Circuit, medical malpractice and negligence do not equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (finding that for liability to attach, defendant must know of and then disregard an

excessive risk to prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, a plaintiff must first show "an objectively serious medical need[ ] . . . and second, that the response made by [the defendants] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnos[is] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal quotations and citations omitted).[9] To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment. An allegation of negligence is insufficient to state a due process claim." *Daniels*, 474 U.S. at 330-33.

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our

_____

[9] A medical need is serious if it " 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey*, 646 Fed.App'x at 780.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris*, 941 F.2d at 1505. "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and quotations omitted). Additionally, the law is well settled that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact inmate desires a different mode of diagnosis does not amount to deliberate indifference violative of the Constitution).

### 1. Dental Claim

The evidence submitted by Defendants Bates, Roberson, Stanberry, Lovvorn, and Johnson ("QCHC defendants") includes Collins'ss relevant medical records and the affidavits of Dr. Bates, Dr. Roberson, and Nurse Stanberry which address the allegations of deliberate indifference made by Collins. A review of these documents reflects the discussion of medical treatment set forth in the affidavits is corroborated by the objective records contemporaneously compiled with the treatment provided to Collins. The evidence shows Collins entered MCDF on or about August 28, 2012. Nurse Lovvorn conducted Collins's intake interview and evaluation which indicated a history of hypertension and seizures. The dental screening portion of the intake form reflects "no apparent disease" and is otherwise devoid of any comments regarding Collins's teeth including a request or need for immediate dental attention or a dental referral. Nurse Lovvorn observed ringworm on Collins's arms. On September 7, 2012, Dr. Bates reviewed Collins's intake forms and continued his prescription medication for hypertension and seizures and prescribed antifungal cream for the ringworm. Doc. 74 at 1–2, Doc. 74-10 at 1–10; Doc. 228-1.

Collins submitted his first complaint regarding tooth pain more than a month after his incarceration at MCDF. On October 14, 2012, Nurse Copelin evaluated Collins in response to his sick call request regarding throbbing tooth pain which he rated a 3 on a scale of 1-10—10 being the worst. Collins indicated on his sick call request that seven of his top teeth needed to come out. Nurse Copelin's objective findings written on the nursing protocol form reflect Collins was unaware of when his symptoms began. The nurse noted the location of the tooth pain was "right top tooth." Nurse Copelin's objective findings also indicated "loose tooth," "tooth broken," and "gum line swollen." For his plan of care, Nurse Copelin ordered 200 mg of Motrin for Collins to be given twice a day for three days. Nurse Copelin did not observe any jaw or facial swelling or

tenderness, there was no evidence of infection or bleeding gums, and no swelling or tenderness of Collins's lymph nodes which Dr. Bates testifies would have indicated the necessity for an immediate dental referral. Doc. 74 at 2, Doc. 74-11 at 1–2.

On October 17, 2012, Collins submitted an inmate request form. The request form stated:

> I don't know what kind of game this is but I requested to see the dentist not the nurse. I specifically stated I needed my teeth pulled. I heard they was stealing money. Either put my money back on my account or I'm going to take further action! Give me a copy of my sick call form I filled out so I can give it to my lawyer. I haven't seen the dentist!!

Doc. 74-11 at 5. In response to this request, medical staff advised Collins the imposition of medical charges was pursuant to MCDF rules and that he must first be assessed by a nurse before being seen by the dentist. Collins was also informed that if the medication prescribed on October 14, 2012, for his complaint of teeth pain had not been effective, he should sign up for sick call. Doc. 74 at 2; Doc. 74-11 at 5.

Collins submitted a sick call request and was seen by a nurse on October 25, 2012. He stated in his request that he had already seen a nurse, that he did not want to see a nurse, he had already paid $10 to see the nurse, and he wanted his teeth pulled ("I need them pulled bad. 7-top."). Collins, however, refused to allow the nurse to take his vital signs, became irate with the medical staff, and left the medical area stating he was going to call his lawyer. A nursing note on the October 25 sick call request reflects, in part, "eval. for dentist . . . " On October 31, 2012, Dr. Roberson evaluated Collins. Based on Collins's clinical presentation and Dr. Roberson's medical judgment regarding the appropriate course of treatment, he extracted two of Collins's teeth. In his affidavit, Dr. Roberson states:

> 6. In my forty plus years of providing care to patients, I have frequently evaluated, assessed, and treated patients to determine whether dental extraction was warranted.

7. On October 31, 2012, I saw Collins and evaluated him in response to a sick call request.

8. Per my medical note, Collins complained of pain in the upper right quadrant of his mouth.

9. In my medical note, I documented that Collins had periodontal disease and bone loss in this area.

10. When a patient has bone loss, I communicate to them that the teeth are not treatable and recommend extraction as clinically indicated.

11. Generally, a tooth is only extracted if it has been damaged to the point that it cannot be repaired. This was true for the two teeth I extracted for Collins.

12. Patients always have the right to refuse treatment and forego extraction if that is his or her desire.

13. At that time, based on his clinical presentation and my medical judgment as to the appropriate course of treatment, I extracted two teeth.

14. I extracted Collins's second molar (tooth #2) and first bicuspid (tooth #4).

15. I also prescribed Collins Ibuprofen 800 mg to be taken twice daily for three days to alleviate pain he might experience due to the extractions.

Doc. 238-1 at 1-2; *see also* Doc. 74 at 2; Doc. 74-11 at 6–7; Doc. 228-1.

On November 1, 2012, a nurse saw Collins in response to his sick call request of the same date in which he stated "I do not! Need no nurse. I need [ ] teeth out at 1 time. I've seen it done." The nurse evaluated Collins for his complaint that his tooth on the side hurt and noted on the nursing form the existence of "loose tooth" and "facial tenderness." Collins indicated his symptoms began two months ago and he rated his pain a 9 on a scale of 1-10. The nurse initially ordered 200 mg of Ibuprofen twice daily but cancelled the order when she realized Collins had a prescription for 800 mg of Ibuprofen twice a day for three days because of the previous day's dental procedure. Doc. 74 at 2; Doc. 74-11 at 3, 6–10.

Collins submitted inmate request forms on November 29, 2012, December 17, 2012, December 22, 2012, January 2, 2013, and January 10, 2013, requesting information about various matters which did not directly concern complaints about tooth pain.[10] On January 18, 2013, Collins submitted a sick call request in which he stated he could no longer tolerate the pain and to "please get these 5 top teeth out of my mouth." Nurse Stanberry evaluated Collins on January 19, 2013, for his complaint that "all teeth @ the top hurt and makes it hard to chew. Reports not eating since yesterday [?] morning. No redness or swelling noted to gums or jaw." Collins reported the onset of his symptoms as chronic, described the pain as dull and a 5 on a scale of 1-10. In her affidavit, Nurse Stanberry testifies that at the time of her assessment, Collins's vital signs were within normal limits and he was in no apparent distress. She observed no redness, swelling, bleeding, or sign of infection. She discussed her evaluation of Collins with Dr. Bates. Despite the absence of swelling, redness, bleeding, infection, or any other indication a dental referral was needed, out of an abundance of caution, Dr. Bates testifies he instructed Nurse Stanberry to place Collins on the list to see the dentist and ordered 200 mg of Ibuprofen for three days. Collins's medical records, however, do not reflect that he saw the dentist again while at MCDF. Nurse Stanberry testifies that due to the passage of time she is uncertain whether Collins was placed on the list to see the dentist. She affirms that Collins did not thereafter communicate any further complaints about tooth pain nor did he submit any additional inmate requests or sick call slips regarding his teeth after January

---

[10] For example, on November 29, 2012, Collins submitted an inmate request form in which he sought the name of the dental assistant who he talked to about his "partial being broken." On December 22, 2012, Collins submitted an inmate request form in which he noted: (1) his dental extractions on October 31, 2012; (2) signing back up for sick call on November 1, 2012, and medical personnel informing him he had signed back up too soon; and (3) he had not received pain medication after the October 31 dental procedure. Collins's apparent purpose for the December 22 request form, however, was to ask for the return of a co-pay for which he believed he should not have been charged. In his January 10 inmate request form, Collins wanted to know why he was not seen by a legal orthodontist when he signed up for dental. Doc. 74-13 at 1, 3, 6.

18, 2013. As noted, Collins transferred to ADOC custody on August 15, 2013. Doc. 74 at 3 & 5, Doc. 74-13 at 1–3, 5–6, Doc. 74-14 at 1–3, Doc. 74-15—74-18; Doc. 238-2 at 24.

In his opposition, Collins pairs his January 18, 2013, sick call request form in which he complained about no longer being able to tolerate his tooth pain to Defendant Maldonado's reference to Collins as a "grievance abuser" which he maintains is evidence of a serious medical need and the existence of a "causal connection between the defendants' indifference and Collins'ss injury."[11] Doc. 110 at 6. Defendant Maldonado's conduct in referencing Collins as a grievance abuser in relation to a specific grievance inquiry he had made on several occasions and to which jail staff had repeatedly responded, however, does not establish any causal connection between his allegation of deliberate indifference and the conduct of any of the named defendants. *See Estelle*, 429 U.S. at 107. Further, for reasons explained later in the Recommendation, there is no evidence that the conduct Collins attributes to Defendant Maldonado interfered with his ability to access or receive medical care and treatment from the QCHC Defendants. *See* Doc. 80-1; Doc. 74-10–74-18.

Collins also maintains that a delay in providing medical care for a serious or painful condition or injury constitutes deliberate indifference. Doc. 110 at 6. He argues in that Dr. Roberson "had an obligation . . . that binds [ ] to a specific performance," and "therefore a dentist may be found liable for [ ] deliberate indifference" by deciding to "[t]ake an easier or less

---

[11] Regarding Collins's reference to being referred to as a grievance abuser, the evidence reflects that on January 28, 2013, in response to a grievance Collins submitted regarding a matter to which jail staff had previously responded, Defendant Maldonado advised Collins he had become a grievance abuser and, therefore, could not write any more grievances regarding the policy of charging inmates co-pays for medical services provided in relation thereto. Because he had written several grievances on this same topic and had received responses, Defendant Maldonado placed Collins on the grievance abuser list as to that subject. Defendant Maldonado affirms that placement on the grievance abuser list does not prevent an inmate from filing a grievance about other unrelated matters or having the inmates' grievance addressed by jail personnel. Doc. 80-1 at 1–4.

efficacious course of treatment," by failing to respond to a known medical problem, or by providing incompetent or inadequate care. Doc. 110 at 6. Collins further maintains Dr. Roberson failed to respond reasonably to his condition, failed to meet the applicable standard of care, and knew of Collins's condition and failed to respond. Doc. 110 at 28. Collins also submits copies of medical records made during his incarceration at the Ventress Correctional Facility regarding dental extractions he underwent at that facility. Doc. 110-1 at 46–49, Doc. 198-9, Doc. 198-10. These records show that on October 13, 2013, Collins signed a request and authorization form for the extraction of three teeth, and on November 6, 2013, he signed another request and authorization form for the extraction of two additional teeth. *Id.* Collins contends these records show "clear and convincing proof" that he was treated for those teeth. Doc. 198 at 3.

In this case, Collins's medical records show that QCHC medical staff saw him in response to his sick call requests concerning complaints about his teeth. Nursing staff evaluated Collins unless he refused care. When medical staff evaluated Collins on October 14, 2012, the plan of care included medication for pain but his symptoms did not reflect a need for an immediate dental referral. In response to Collins's inmate request form filed October 17, 2012, in which he claimed he requested to see a dentist, QCHC medical staff advised him if the medication ordered for his tooth pain on October 14, 2012, had not been effective, it was necessary for him to submit a sick call request in order to be seen by medical personnel. Collins then submitted a sick call request for dental care wherein he complained about already having seen a nurse, that he wanted his teeth pulled, and did not want to see the nurse. In response, Collins was called to the medical unit for evaluation on October 25, 2012, but he refused to be evaluated by nursing staff. Notwithstanding Collins's refusal to follow sick call policy on October 25, Collins was evaluated by Dr. Roberson on October 31, 2012, pursuant to his sick call request. Dr. Roberson noted periodontal disease and

bone loss in the upper right quadrant of Collins's mouth and extracted two of Collins's teeth which the dentist determined were the only two damaged beyond repair. For pain, the dentist prescribed Collins 800 mg of Ibuprofen for three days. Dr. Roberson did not recommend any additional extractions nor did he schedule any additional dental procedures for Collins. The next day, on November 1, 2012, Collins submitted a sick call slip indicating he did not need to see a nurse and wanted his teeth pulled all at once. Nursing staff noted Collins had been prescribed pain medication after the October 31 dental procedure and there was no indication he required additional treatment or evaluation at the time. Over two months later, on January 18, 2013, Collins submitted a sick call request complaining of painful teeth. Nurse Stanberry evaluated Collins on January 19, 2013. She observed no swelling, redness, or indication of infection. She discussed her evaluation of Collins with Dr. Bates who directed the nurse to provide Collins with 200 mg of pain medication. Despite there being no objective indication that Collins needed to be seen by the dentist, Dr. Bates, as a cautionary measure, directed that Collins be put on the list to see the dentist. As noted, the records do not reflect that Collins was seen by the dentist prior to his transfer from MCDF in August of 2013 nor do they reflect that he sought or requested medical attention for any dental-related matter after the January 19, 2013, examination.[12]

Although the need for and failure to receive dental care can, in certain circumstances, demonstrate an objectively serious medical need, *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), here Collins fails to present facts supporting the subjective component of an Eighth Amendment claim. That is because he has failed to show how any QCHC defendant acted intentionally or with reckless disregard to deny or delay medical care or that the QCHC defendants

---

[12] Collins states in his affidavit filed May 28, 2014, he wrote a request on February 4, 2013, in reference to having five teeth pulled. Doc. 17. Although the record does not contain an inmate request form dated February 4, 2013, the court notes that the inmate requests filed by Collins after January 18, 2013, and which referenced dental matters concerned being charged co-pays for medical services. Doc. 80-1.

or any other medical staff acted with "an attitude of deliberate indifference" towards his dental problems. *Taylor*, 221 F.3d at 1258. The undisputed medical records reflect medical staff evaluated and treated Collins in response to his sick call requests regarding complaints about his teeth, that Dr. Roberson extracted two teeth based on his professional judgment that they were the only two whose clinical presentation reflected the need for extraction, and that Collins was routinely provided medication to address his complaints of pain. *See Enriquez v. Kearney*, 694. F.Supp.2d 1282, 1296 n. 12 (S.D. Fla. 2010) ("[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action."). Collins's disagreement regarding both the process to be followed by inmates seeking medical care and the assessment of co-pays for such treatment is not evidence of deliberate indifference on the part of the defendants. That Collins disagrees with the efficacy of the treatment recommended and provided or believes a different course of treatment should have been followed also does not state a constitutional claim. Indeed, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis and course of treatment [does not] support a claim of cruel and unusual punishment." *Harris*, 941 F.2d at 1505; *Garvin,* 236 F.3d at 898.

To the extent Collins complains about a delay or denial in dental care following medical staff's evaluation of him on January 19, 2013, and Dr. Bates' direction to Nurse Stanberry that he be placed on the list to see the dentist, the court notes that depending on the circumstances, including the length of the delay, deferred medical treatment can constitute deliberate indifference. *Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994). Collins, must, therefore, demonstrate that the QCHC defendants knew of a serious medical condition from which he was suffering and delayed treatment either intentionally or with reckless disregard. *See generally, Rogers*, 792 F.2d at 1058 ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock

the conscience or to be intolerable to fundamental fairness violates the eighth amendment."). For purposes of this Recommendation, the court assumes, without deciding, that Collins's name was not placed on the dental referral list following his medical evaluation on January 19, 2013, regarding his complaints of dental pain. *See* Doc. 238-2 at 4, Stanberry Affidavit ("I cannot say with certainty whether Collins was placed on the list to see the dentist.). There is no evidence or allegation, however, that this omission in and of itself amounted to an intentional act to delay or deny treatment for Collins or that any QCHC defendant was otherwise deliberately indifferent to his medical condition in this regard. "There is a difference between 'mere incidents of negligence or malpractice' and deliberate indifference. The former, 'while no cause for commendation, cannot . . . be condemned as the infliction of punishment' in violation of the Eighth Amendment. The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the defendant knew of a serious risk to the plaintiff and affirmatively disregarded it." *Massey*, 646 Fed.App'x at 780 (internal citations omitted). That is because an "accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a medical wrong under the Eight Amendment." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980). Eighth Amendment liability cannot be grounded on "mere negligence" as neither negligence in diagnosis or treatment nor medical malpractice constitute a cognizable claim for deliberate indifference in a § 1983 case. *Monteleone v. Corizon*, ___Fed.App'x. ___, 2017 WL 1404680, at *2 (11th Cir. Apr. 20, 2017) (No. 15-11906) (*citing Estelle,* 429 U.S. at 106) ("Mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference.").

Here, the record does not support a finding that any QCHC defendant knew of and intentionally disregarded an excessive risk to Collin's health. While Collins submits evidence of

undergoing additional tooth extraction procedures over two months after his transfer from MCDF, the fact of those extractions alone, and without more, is not tantamount to evidence of any deliberate indifference by the QCHC Defendants in their care and treatment of Collins during his incarceration at the county jail. The record is devoid of evidence that the QCHC defendants refused to treat Collins, engaged in "deliberately indifferent" delay in treating his complaints of dental complaints, or had subjective knowledge of, and disregarded, a risk of serious harm to Collins in response to his complaints of dental pain.

In this case, Collins's medical records establish that he received medical evaluation and treatment in response to his requests for medical care in accordance with the QCHC defendants' professional judgment. As explained, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition does not constitute an actionable wrong under the Eighth Amendment nor does the fact that a plaintiff may disagree with the efficacy of the treatment recommended or simply prefer a different course of treatment state a valid claim of medical mistreatment under the Eighth Amendment. *Adams*, 61 F.3d at 1545. Further, Collins's self-serving assertions of deliberate indifference do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). Collins presents no evidence which reflects the QCHC defendants knew that the manner in which they treated his condition created a substantial risk to his health and with this knowledge consciously disregarded the risk. *Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("It is

obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause."); *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."); *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (citation omitted) ("[T]he essential test is one of medical necessity and not one simply of desirability."). Because the court finds no evidence—significantly probative or otherwise—tending to show the QCHC defendants acted with deliberate indifference to a serious medical need experienced by Collins, summary judgment is due to be granted in their favor on this claim.

### 2.    The Abscess Claim

Collins complains the QCHC defendants exhibited deliberate indifference to his serious medical needs by failing to properly diagnose and treat him for an abscess on his chest. He contends that on February 1, 2013, "infection was setting in, causing inflammation of the bone, (osteomyelitis)" . . . his mouth was becoming worse, and the smell was "horrable" [sic].[13] On February 7, 2013, he submitted a sick call request "because infection started filling on the left side of his chest and for six months Collins went through agonizing pain due to neclect [sic] until 8/9/13" when he was taken to Jackson Hospital for surgery.[14] Doc. 1 at 12, 19.

---

[13] To support his self-diagnosis of an infection causing osteomyelitis, Collins attaches an exhibit to his complaint from a web forum discussion on the website www.nakedscientists.com. Doc. 1, Exh. 1-1 at 2–6. The topic of the discussion is entitled "How Dangerous are Tooth Abscesses?" Doc. 1, Exh. 1-1 at 2. Dr. Bates testifies that Collins's belief that his tooth pain was connected to the development of an abscess on the left side of his body and his suggestion "that his teeth were left untreated, and somehow developed' into a boil (abscess) on his chest, . . . is simply not possible." Doc. 74 at 5.

[14] Collins alleges medical personnel evaluated him on February 7, 14, & 25, 2013, for complaints regarding his chest and indicates he was charged copays for each visit. Collins cites to Exhibits 8, 9, and 10 attached to his complaint in support of his assertions. The referenced exhibits support Collins's claim that he was charged a co-pay for medical services and prescriptions received at MCDF on the specified dates. Doc. 1-8, 1-9. These exhibits do not, however, provide a description of the medical service rendered on those

In addressing Collins's claim regarding an infection on his chest, Dr. Bates states:

9. On February 7, 2013,[1] Mr. Collins saw Nurse Slater and complained of hearing voices in his head; I instructed her to place him on the list to be seen by me on my next visit to MCDF. (Ex. F, pp. 1–2). I saw Mr. Collins on February 14, 2013 and referred him to Dr. Yalamanchili ("Dr. Chili"), who had previously treated Mr. Collins prior to his incarceration, for evaluation. (Ex. F, pp. 3–4). Dr. Chili saw Mr. Collins on February 25, 2013, noted that Mr. Collins was suffering from hallucinations, diagnosed him with psychosis, and prescribed Haldol. (Ex. F, pp. 4–5). To facilitate our care for Mr. Collins in MCDF, Dr. Chili's office provided QCHC with records from when he treated Mr. Collins in August 2012, prior to his incarceration. (Ex. F, pp. 6–18).

> [1]Mr. Collins recorded the date of his sick call request as *January* 6, 2013, but the fact that he was seen by the nurse on February 7, 2013 indicates to me that he most likely initiated the request on February 6, 2013. (Ex. F, p. 1)

10. Also in February 2013, Dr. Gurley performed a 90-day update to Mr. Collins's chronic care plan (for hypertension and epilepsy), renewing his Norvasc and Dilantin prescriptions, and ordering lab work. (Ex. G, pp. 1–3, 16). At the end of April/beginning of May 2013, I performed another 90-day update to Mr. Collins's chronic care plan and renewed his prescriptions for Norvasc and Dilantin. (Ex. G, pp. 10–14, 16). Mr. Collins refused to participate in a routine prostate exam (Ex. G, p. 17). Nurses continued to monitor Mr. Collins's blood pressure and administer his medicines, including Haldol, through February, March, April, May, and June 2013. (Ex. G, pp. 4–9, 18).

11. On July 16, 2013, Mr. Collins complained for the first time about a swollen cyst or knot on the left side of his chest; he was seen by a nurse the next day, July 17, 2013, and Mr. Collins reported that it developed about a month prior and that his pain was a "10" on a scale of 1 to 10. (Ex. H, p. 1). The nurse consulted with me by telephone, and I instructed her to administer 800 mg/day of Motrin for 7 days, to administer a warm compress twice daily for 3 days, and to place him on the list to be seen by me on my next visit to MCDF. (Id.) Mr. Collins was instructed to "return to medical as needed." (Id.) I saw Mr. Collins the next day, July 18, 2013, and confirmed that the course of treatment (Motrin, warm compress) was appropriate, and I also ordered an x-ray. (Ex. H, p. 2–3). Nurses administered the Motrin and warm compress as directed, except that Mr. Collins refused the compress on July 19, 20, and 21, 2013. (Ex. H, pp. 4–5). The x-ray was performed July 25, 2013, read on July 28, 2013, and revealed nothing abnormal. (Ex. H, pp. 6–7).

occasions. Collins's unrefuted medical records, however, reflect he did not receive medical care for chest-related complaints on the above-noted dates. *See e.g.*, Doc. 74-15 at 2–4.

12. On July 27, 2013, Mr. Collins complained of "sharp chest pain" and an EKG was performed, which was normal. (Ex. H, pp. 8–9). Mr. Collins was told to "report symptoms if they worsen." (Ex. H, p. 8). I saw Mr. Collins on August 1, 2013, and decided to refer him to another physician to rule out the possibility that he had a malignant or cancerous tumor. (Ex. H, pp. 10–11).

13. Before Mr. Collins could be seen by the other physician, he saw a nurse on August 13, 2013, complaining of difficulty breathing and chest pain, with a "large soft tissue mass on his left chest wall." (Ex. I, p. 1). The nurse consulted with me by telephone and I instructed her to send him to the Jackson Hospital Emergency Room for evaluation. (Ex. I, pp. 1–2). He was sent to Jackson Hospital, where Dr. Patel performed an "I & D," or incision and drainage, on an "abscess" or "boil," consisting of cutting open the boil and draining out the puss. (Ex. I, pp. 3–8). Mr. Collins was returned to MCDF the same day, and I again consulted with the nursing staff—we placed him in the infirmary for observation, administered Bactrim (an antibiotic prescribed by Dr. Patel), dressed and cleaned his wounds daily, and I saw Mr. Collins on August 15, 2013, after which he was returned to the general population. (Ex. I, pp. 1, 9–14).

14. On August 15, 2013, Mr. Collins was transferred to Kilby Prison, after which neither I nor anyone else with QCHC was involved in his care. (Ex. I, p. 15).

15. I have reviewed Mr. Collins's complaint. I note that he alleges that his alleged tooth pain in the upper right side of his mouth was connected to the development of his abscess on the left side of his body. He seems to suggest that his teeth were left untreated, and somehow "developed" into a boil on his chest. In my medical opinion, this is simply not possible. Mr. Collins had two separate issues, tooth pain and a chest abscess, separated by approximately six months. Both were treated appropriately and timely.

Doc. 74 at 3–5.

Collins's recollection of the time period regarding his complaints of chest pain are not supported by his medical records. Although he alleges he went through agonizing pain for six months because of an infection on the left side of his chest (Doc. 1 at 19), Collins's medical records reflect he made his first complaint regarding swelling on this side of his chest on July 16, 2013. Nursing staff evaluated him on July 17, 2013, and notified Dr. Bates of his condition who prescribed a course of treatment including pain medication. Collins continued to receive medical attention and treatment in response to his complaints of chest pain, including an x-ray, an EKG,

and referral to another physician for examination regarding a possible tumor. Before Collins could undergo examination by the referral physician, on August 13, 2013, Dr. Bates instructed medical personnel to arrange his transport to a local emergency room for evaluation after he complained about difficulty breathing, chest pain, and a large soft tissue mass on his left chest wall. Following treatment at the hospital for an abscess ("boil"), Collins was returned to MCDF the same day and placed in the infirmary for observation. Collins returned to general population on August 15, 2013. Doc 74-17 at 1–11, Doc. 74-18 at 1–15.

Although Collins maintains the QCHC defendants failed to provide proper and adequate medical care and treatment for his complaints of chest pain, he presents no medical evidence establishing they disregarded a substantial risk to his health. The unrefuted medical records regarding the treatment Collins received in response to his complaints of chest pain fail to support his allegation that the QCHC defendants' diagnosis and treatment for this condition amounted to deliberate indifference. It is undisputed that the QCHC defendants examined Collins each time he presented complaints relative to chest pain. It is likewise evident that the QCHC defendants rendered treatment to Collins in accordance with their professional judgment. The law is settled that "[s]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Collins presents no evidence which indicates the QCHC defendants knew that the manner in which they provided treatment created a substantial risk to Collins's health and that with this knowledge consciously disregarded such risk. *See Farmer,* 511 U.S. at 837; *Johnson*, 145 F.3d at 168. The fact that the course of care and treatment administered was not as effective or as timely as Collins may have wished does not, under the circumstances of this case, reflect deliberate indifference on the part of the QCHC Defendants. *Massey,* 646 F. App'x at 780; *Garvin*, 236 F.3d

at 898; *Adams*, 61 F.3d at 1545; *Hamm*, 774 F.2d at 1505. Because the record contains no evidence reflecting the QCHC defendants acted with deliberate indifference to Collins's medical needs, summary judgment is due to be granted in their favor on this claim. *Carter*, 352 F.3d at 1350.

### 3. Medical Co-pays

To the extent Collins complains that imposition of a fee for medical services violates his constitutional rights, he is entitled to no relief. Requiring inmates with adequate resources to pay for a small portion of their medical care does not necessarily result in arbitrary or burdensome procedures which constitute a violation of the Eighth Amendment. *See Reynolds v. Wagner*, 936 F. Supp. 1216, 1224 (E.D. Pa. 1996). Collins does not allege Defendants refused to provide necessary medical treatment because he lacked sufficient funds nor is there any evidence that Collins's health was endangered because of the imposition of a fee for medical services and prescriptions. The allegations contained in Collins's complaint simply reflect his belief that he is entitled to the benefit of cost-free maintenance. The law is clear that if an inmate is unable to pay for necessary medical care, he must be maintained at state expense. *Estelle*, 429 U.S. 97. It is equally clear, however, that fee-for-medical and/or dental services programs are not a condition which requires inmates to bear unconstitutional conditions, but rather, forces them to make responsible resource allocation decisions. *See Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995). Defendants are entitled to summary judgment on this claim.

### E. The County Jail Defendants

### 1. Deliberate Indifference

Collins challenges Defendant Maldonado's conduct in referring to him as a "grievance abuser." He alleges that Defendant Maldonado's actions resulted in a denial of medical care in violation of his Fifth and Fourteenth Amendment rights. Doc. 1 at 19–20. Collins also appears to

complain that Defendant Robinson uses both derogatory language and the detention center's policy regarding grievances to instill fear in jailers and medical staff for the purpose of impeding the provision of medical care to inmates. Collins maintains he sent "at least (25) medical request forms to . . . Dr. Ronn and Dr. Bates . . . [but] they failed to take appropriate actions and respond to Collins'ss medical needs." According to Collins, "inadequate trained officers were <u>DIRECTED TO USE THEIR OWN JUDGEMENT</u> about the seriousness of prisoner's needs/pre-trial detainees' needs rather than being DIRECTED to consult <u>TRAINED MEDICAL PERSONNEL</u>." Doc. 32 at 4–6 (emphasis in original).

Defendant Robinson affirms that MCDF has a policy that inmates may be placed on the grievance abuser list if they have abused the grievance process, or have not used the grievance process in good faith. Collins's inmate file maintained at the detention facility shows he filed at least four grievances on the same two topics: 1) a nursing visit on November 1, 2012, where medical personnel informed him he had signed up too soon to be seen by the dentist; and 2) whether he had been properly assessed a co-pay for November 1 nursing encounter. Defendant Maldonado placed Collins's name on the grievance abuser list because after filing the initial grievance regarding these two topics, he filed several more grievances concerning the same issues despite Defendant Maldonado's investigation of his initial grievance on these particular concerns and her response thereto. Defendant Maldonado verbally informed Collins he could not write any additional grievances on the same issues because she had already responded to his questions and concerns on several occasion. She advised him he had been placed on the grievance abuser list because he had submitted repeated grievances on the same issues which constituted a bad faith use of the grievance system. Defendant Maldonado further informed Collins he could still submit sick call requests and file grievances on any other subject. Nonetheless, Defendant Maldonado states

an inmate who has his name placed on the grievance abuser list may still file grievances which will be addressed and considered. On February 12, 2013, Collins submitted an inmate request to Defendant Maldonado asking why he had not received copies of his grievances and stating he had not received a written statement indicating he was not allowed to file requests or grievances. In response, Defendant Maldonado reiterated to Collins he could still write requests and grievances but informed him not to write any further grievances regarding the matters made the subject of his November 1, 2012, grievance to which she had responded several times. Collins's detention facility and medical records reflect that he continued to file inmate requests and sick call requests until he was transferred to custody of the Alabama Department of Corrections on August 15, 2013. Doc 78-1 at 1–3; Doc. 80-1 at 1–37; Doc. 74-10–74-18.

Defendants Robinson and Maldonado deny interfering with or delaying Collins's access to medical care as a result of MCDF's grievance policy. The grievance abuser list is an administrative aid devised to assist the grievance clerk with the administration of inmate grievances. Notwithstanding placement of Collins's name on the detention facility's grievance abuser list, no evidence has been presented that he was ever denied the opportunity to file inmate grievances, inmate requests, or sick all requests. While Defendant Maldonado directed Collins to file no additional inmate grievances regarding matters to which she had responded on several occasions, jail personnel did not tell Collins he could not sign up for sick call or submit inmate grievances or requests for other medical or jail-related services. There is also no evidence that the existence of the detention center's policy regarding the filing of inmate grievances and requests interfered with Collins's ability to request or access medical care. Finally, the evidence does not support Collins's allegation that jail staff were told to use their own judgment regarding the seriousness of an inmate's medical needs rather than directing the inmate to consult with medical staff. *See* Doc. 32

at 6. As explained, Defendant Maldonado informed Collins he was not prohibited from filing grievances or requests for medical care other than regarding the issues to which she had responded several times, and she advised him if he needed medical services, he should sign up for sick call. Doc. 80-1 at 4–5.

A correctional officer may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825. "When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). *Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir. 1984).

In response to the Defendants Maldonado's and Robinson's dispositive motion, Collins has come forward with no evidence which supports his allegations that these defendants ignored a serious medical condition or that he suffered any detrimental effect as a result of their alleged actions. In addition, Collins presents no evidence that Defendants Maldonado and Robinson in any way disregarded a substantial risk to his health by delaying or interfering with his access to medical treatment. *See generally Farrow*, 320 F.3d 1235. Further, Collins has failed to come forward with any evidence that Defendants Maldonado and Robinson knew that he faced as a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 836–37. It is well settled that supervisory personnel are generally entitled to rely on the judgment of the medical professionals entrusted to provide that care, *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006), and such personnel "will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.

2004) (in the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (citation and quotation marks omitted) ( "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

The burden is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim. *Celotex*, 477 U.S. at 322. Collins must go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quotation marks omitted). In this case, Collins has failed to establish a genuine dispute about deliberate indifference on the part Defendants Maldonado and Robinson. The court, therefore, concludes their motion for summary judgment is due to be granted on this claim.

## 2.     Access to the Grievance Procedure

To the extent Collins argues that Defendants Maldonado and Robinson interfered with his ability to access MCDF's grievance procedure, this claim entitles him to no relief. The law is settled that an inmate has no constitutionally-protected liberty interest in access to a prison's grievance procedure. *Bingham v. Thomas,* 654 F.3d 1171, 1177–78 (11th Cir. 2011) (affirming trial court's dismissal, under 28 U.S.C. § 1915A, of inmate's challenge to adequacy of prison's grievance procedures finding "a prison grievance procedure does not provide an inmate with a

constitutionally protected interest"); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding that federal prison administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure," and that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding "[t]here is no legitimate claim of entitlement to a grievance procedure"); *see also Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) (quotation marks omitted ) (finding "[s]tate-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory."). Based on the foregoing, the court, concludes Defendants Maldonado's and Robinson's motion for summary judgment is due to be granted on this claim.

**F.      Conspiracy**

**1.      Conspiracy Claim Under § 1983**

Collins alleges the named defendants conspired to make him suffer regarding the provision of medical care and treatment he received at MCDF. Doc. 32 at 4–5. In order to establish a § 1983 conspiracy, "a plaintiff must show among other things, that Defendants reached an understanding to violate [his] rights." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citation and quotation marks omitted) (brackets in original). Collins does not, however, allege any facts suggestive of conspiracy. Rather, his allegations of conspiracy are conclusory and vague and fail to allege much less indicate Defendants reached an agreement or a tacit understanding to commit acts in violation of any constitutionally protected right to which he is entitled. *See Fullman v.*

*Graddick*, 739 F.2d 553, 556-7 (11th Cir. 1984); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990); *see also Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy). Collins cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that an agreement was made. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Here, Collins's claim of conspiracy by Defendants to deny him constitutionally adequate medical care and treatment during his incarceration at MCDF is, at best, is a self-serving, purely conclusory allegations that fails to assert those material facts necessary to establish a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). Accordingly, Defendants are due to be granted summary judgment on Collins's civil conspiracy claim.

### 2. Conspiracy Claim under 42 U.S.C. §§ 1985 and 1986

In addition to bringing his claims under 42 U.S.C. § 1983, Collins alleges violations of his constitutional rights as alleged in the complaint and amendments thereto under 42 U.S.C. §§ 1985 and 1986. Docs. 1, 29, 32, 56. Collins seeks to proceed under subsection 3 of § 1985. Doc. 56 at 7. To bring a successful claim under § 1985(3), a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). As explained, Collins's allegation of conspiracy is conclusory

and vague. The second element requires Collins to "show that the deprivation of rights or privileges occurred as a result of some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Kivisto v. Miller, Canfield, Paddcok & Stone, PLC*, 413 F. Appx. 136, 140 (11th Cir. 2011) (quotation marks omitted). Collins does not allege Defendants' conduct was "motivated by racial or otherwise class-based invidiously discriminatory animus" as required under § 1985(3). *Burrell v. Bd. of Tr. of Ga. Military Coll.*, 970 F.2d 785, 794 (11th Cir. 1993). Further, no deprivation of a constitutional or statutory right has occurred so as to satisfy the fourth element of a § 1985(3) claim. Accordingly, Collins's claim under § 1985 entitles him to no relief. The failure to state a claim under § 1985 precludes Collins from stating a claim under § 1986. *Park*, 120 F.3d at 1160. ("The text of § 1986 requires the existence of a § 1985 conspiracy.").

## G.    Additional Requests for Relief

Collins requests the court to order an investigation of Defendants by the United States Attorney for violations of 18 U.S.C. §§ 241 and 242. To the extent Collins seeks relief for alleged criminal conspiratorial actions purportedly committed in violation of his constitutional rights as prohibited by 18 U.S.C. § 241 and § 242 or any other federal criminal statute, he is entitled to no relief. "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States. There is no private right of action under this criminal statute." *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D. Tex. 1997) (citations omitted); *Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D. D.C 2003) (plaintiff foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action. . . . Therefore, the Court must dismiss the plaintiff's claims that have been brought pursuant to 18 U.S.C. §§ 242 and 371."). Collins is, therefore, precluded from obtaining relief under any federal

criminal statute "because … they do not convey a private right of action" nor do they authorize an individual to initiate criminal proceedings. *Gipson*, 18 F. Supp. 2d at 668; *Rockefeller*, 248 F. Supp. 2d at 23.

Collins also seeks relief under the Fifth and Fourteenth Amendments. He alleges that Defendants' conduct constituted deliberate indifference to his medical needs which subjected him to cruel and unusual punishment and that because he was a pre-trial detainee during a portion of the relevant time period, such conduct violated his Fifth Amendment right to due process and his Fourteenth Amendment due process and equal protection rights. Doc. 1 at 26.

The Fifth Amendment governs the conduct of federal actors, not state actors. *Buxton v. City of Plant City, Florida*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law."). Regarding Collins's attempt to invoke the Fourteenth Amendment with respect to his deliberate indifference claim, as explained, this claim is properly analyzed under the Eighth Amendment. Finally, being a pre-trial detainee is not considered a suspect classification for purposes of the equal protection clause. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990) (finding "[p]risoners do not constitute a suspect class."); *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989) ("The status of incarceration is neither an immutable characteristic, nor an invidious basis of classification.").

**H.     Supplemental Jurisdiction**

To the extent Collins asserts claims arising under state law, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotation marks and citations omitted). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims. *L.A. Draper & Son*, 735 F.2d at 428. In view of this court's resolution of the federal claims presented in the complaint, Collins's supplemental state law claims are due to be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tenn. Valley Auth.*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's motion to dismiss his claims for declaratory and injunctive relief and his claims brought under the Americans with Disabilities Act and the Universal Declaration of Human Rights Act (Doc. 110) be GRANTED;

2. Plaintiff's motion to dismiss the complaint and amendments thereto against Defendants Baker, Copelin, Jemison, Slater, and Walker (Doc. 110) be GRANTED;

3. Defendants Baker, Copelin, Jemison, Slater, and Walker be DISMISSED with prejudice as parties to the complaint and amendments thereto;

4. The motions for summary judgment filed by Defendants Bates, Roberson, Stanberry, Lovvorn, Johnson, Maldonado, and Robinson (Docs. 73, 74, 77, 78, 228, 238) be GRANTED;

5. Plaintiff's state law claims be DISMISSED without prejudice;

6. Judgment be GRANTED in favor of Defendants Bates, Roberson, Stanberry, Lovvorn, Johnson, Maldonado, and Robinson;

7. This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before August 18, 2017**, the parties may file an objection to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 4th day of August 2017.

    /s/   Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE